## FITZGERALD *v.* VAUGHN.

No. 13096. JANUARY 10, 1940. REHEARING DENIED FEBRUARY 19, 1940.

*McDonald & McDonald,* for plaintiff.

*Benjamin Zeesman,* for defendant.

DUCKWORTH, Justice. On November 7, 1938, Sam Fitzgerald filed suit against J. F. Vaughn, seeking reformation of two notes and a bond for title and judgment on the notes as reformed. The petitioner alleged, that in November, 1936, he agreed to sell the defendant a described tract of land for $2100, and gave the defendant a bond for title to the land; that the agreement between the parties was that the defendant should assume a loan of $800 against the land, pay $250 in cash, and give two notes of $525 each, with interest from date, one payable on September 15, 1937, and the other payable on September 15, 1938; that the attorney who

drew the papers for the parties, through mistake or inadvertence, drew notes in the sum of $425 each, and stated in the bond for title that the notes were for this amount; and that through mutual mistake the parties signed the notes and bond for title, without discovering that the notes were for $425 instead of $525 as they should have been. He further alleged that he discovered the mistake shortly before the first note became due, and then notified the defendant of the error; and that the defendant paid the first note of $425, but he is still indebted to the plaintiff in the sum of $625 and interest. The prayers were for reformation of the bond for title and the notes, and for judgment thereon. The defendant in his answer denied that he agreed to pay $2100 for the land. He alleged that the agreed purchase-price was $1900; and that the notes were correct in amount; that he notified the plaintiff that he was ready to pay the second $425 note when it came due, but the plaintiff refused by his conduct to allow defendant to pay same; and that on December 5, 1938, he formally tendered the full amount of this note with interest to date, but the plaintiff refused to accept the tender. The defendant prayed for specific performance of the contract as written.

The jury, upon conflicting evidence, returned a verdict for the defendant on the issue of mutual mistake, the only issue submitted to it. By consent of the parties the question of interest and costs was submitted to the judge, who entered a decree casting the costs upon the plaintiff; granting interest on the second note, on which judgment was entered for plaintiff, only to the date of the formal tender, December 5, 1938; and ordering specific performance by the plaintiff upon the defendant's payment, within ten days from the date of the decree, of the amount due the plaintiff under the decree. The plaintiff excepted to this decree, and to the overruling of his motion for a new trial.

■ The general grounds of the motion for a new trial are not insisted upon in this court, and therefore they will not be considered. However, it is contended that the special ground complaining of the rejection of certain evidence shows error which requires the grant of a new trial. The plaintiff sought to prove by Mrs. Emmie Lee Richey that she heard her son, Wayne Richey, offer the plaintiff $2000 for the land in controversy, two or three days before the contract sought to be reformed was entered into.

The court sustained the defendant's objection that this evidence was irrelevant and immaterial. The plaintiff insists that the testimony was relevant as a circumstance tending to illustrate the actual contract entered into by the parties. On the trial the plaintiff contended that the agreed purchase-price was $2100, while the defendant contended that it was $1900. The plaintiff testified that he told the defendant that Richey had offered him $2000 for the place, and that the defendant then offered him $2100, which he accepted. Under the evidence it appears that both the defendant and Richey were negotiating with the plaintiff for the purchase of the land at the time the plaintiff agreed to sell the land to the defendant. Under these circumstances we think that the rejected evidence was material and relevant to the issue in the case. It tended to corroborate the plaintiff and show the reasonableness of his contention that the true purchase-price was $2100. The jury might have inferred that the plaintiff would not have accepted the defendant's offer of $1900 at a time when he was being offered $2000 by another person. The defendant admitted upon the trial that he knew the plaintiff and Wayne Richey, now deceased, were negotiating with reference to a sale of the land at the time he closed the contract with the plaintiff, but he denied that he knew what price Richey had offered the plaintiff. He stated that the plaintiff accepted his offer in preference to Richey's, because he would have had to give Richey more time in which to pay for the place. This testimony might have been sufficient to overcome the weight of the rejected evidence; but that is a question to be determined by the jury and not the court. *Groover* v. *Wilkes,* 148 *Ga.* 794 (5) (98 S. E. 503). It follows that the court erred in rejecting this testimony and in overruling the motion for a new trial. On the question of relevancy of the evidence, see *Slone* v. *State,* 118 *Ga.* 705 (7) (45 S. E. 630, 98 Am. St. R. 145) ; *McGarr* v. *Green,* 143 *Ga.* 97 (84 S. E. 435) ; *McKoy* v. *Enterkin,* 181 *Ga.* 447 (182 S. E. 518) ; *Talbotton Railroad Co.* v. *Gibson,* 106 *Ga.* 229 (5) (32 S. E. 151).

▪■ The exceptions pendente lite present two questions which are likely to arise on another trial, and therefore should be considered in this opinion. The first is whether the court erred in holding that the defendant made a sufficient tender to stop the running of interest on the note which he admitted that he owed.

In his answer the defendant alleged that before the due date of the note he notified the plaintiff that he was ready to pay this note, but that the plaintiff informed him that he would not accept the amount called for by the note. The defendant further alleged that after the suit was filed he made a formal tender of the amount of the note with interest to the date of the formal tender. The defendant, however, did not make any effort to show a continuous tender, and did not bring any sum into court or aver his willingness to do so. After the jury returned a verdict for the defendant on the issue of reformation, the judge entered a decree allowing interest on the note as written to the date of the formal tender, but denying interest thereafter. We do not think that the pleadings or evidence disclosed such a tender as authorized the judge to deny interest to the date of the judgment. A tender, to prevent the running of interest, must be continuing. *Cothrans* v. *Mitchell,* 54 *Ga.* 498; *Gray* v. *Angier,* 62 *Ga.* 596; *Toomey* v. *Read,* 133 *Ga.* 855 (4) (67 S. E. 100); *Fortson* v. *Strickland,* 23 *Ga. App.* 607 (2) (99 S. E. 147); *Ragan* v. *Newton,* 27 *Ga. App.* 534 (109 S. E. 412); *Jones* v. *Peacock,* 29 *Ga. App.* 240 (114 S. E. 646); *Davis* v. *Metropolitan Life Ins. Co.,* 48 *Ga. App.* 179 (172 S. E. 467). The fact that a tender is made and refused is not sufficient to stop the running of interest. It must also appear that the tender has been kept good by the tenderer being at all times ready, willing, and able to pay the amount tendered. It is contended that the plaintiff by his action excused a tender and thereby rendered it unnecessary for the defendant to make a continuous tender. It is of course a familiar rule that in those cases in which it is necessary to allege a tender as a prerequisite to the maintenance of a suit the tender will be excused where the other party has made declarations equivalent to a refusal to accept a tender if made, or has placed it beyond his power to comply with his part of the contract. While such acts will excuse a formal tender before the institution of a suit, they will not stop the running of interest. The refusal of a tender does not harm the tenderer. He still has the use of the money which by his tender he admitted that he owed the other party. If he does not wish to use this money and wishes to avoid the payment of interest, he can keep the tender good by holding the money ready for payment at any time the other party wishes to accept it. See *Bourquin* v. *Bourquin,* 120 *Ga.* 115, 119 (47 S. E.

639). The pleadings and the evidence in this case failing to show a continuing tender, the court erred in refusing to allow interest after the date of the formal tender.

■ The second question presented by the exceptions pendente lite is whether the court erred in casting the costs of the suit against the plaintiff. This was essentially a suit in equity for reformation of the notes, and this was the only point in issue between the parties. The verdict was against the plaintiff on this issue. However, the plaintiff was entitled to a judgment for the amount of the note which the defendant admitted he owed. The taxing of costs in suits in equity is always within the discretion of the court. Code, § 37-1105. There is no evidence of an abuse of discretion in this case. On the contrary, it appears that the suit would never have been brought had the plaintiff been willing to accept the sum which he would have recovered under the verdict and decree in the case. See *Guernsey* v. *Phinizy*, 113 *Ga.* 898 (3) (39 S. E. 402, 84 Am. St. R. 270).

*Judgment reversed. All the Justices concur.*